UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES DEAN WILKS,

             Plaintiff,

v.

SGT. STOWERS, et al.,

             Defendants.

Case No. C07-2084 MJP

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 53.) Having considered the motion, Plaintiff's response (Dkt. No. 56), the reply (Dkt. No. 60), and all papers submitted in support thereof, the Court DENIES in part and GRANTS in part Defendants' motion. Defendants also move to strike two documents submitted by Plaintiff. The Court GRANTS in part and DENIES in part the motion to strike.

**Background**

      Plaintiff James Wilks pursues four claims arising out of events that occurred while he was held in pretrial detention at the King County Correctional Facility ("KCCF"). (Amended Complaint ("Compl.").) He alleges Defendants used excessive force against him, provided unconstitutional conditions of confinement, and improperly punished him. (Id.) The events at issue span from November 2007 through February 2008. Plaintiff named twenty-one defendants

1  in his amended complaint, but has since voluntarily dismissed claims against twelve of the
2  named defendants. (See Dkt. No. 60 at 2.)
3        The circumstances of Wilks' detention are unusual. Wilks alleges he has been in pretrial
4  detention for over eight years, held for what appears to be a variety of different crimes. (Wilks
5  Decl. ¶ 12.) It is unclear why he was being held at KCCF during the time in question. On
6  February 3, 2010, Judge Armstrong ordered Wilks transferred out of KCCF into the custody of
7  the Washington Department of Corrections. (Dkt. No. 53-4 at 4-5.)
8        Wilks originally filed two separate actions that were consolidated in an order dismissing
9  several of Wilks' claims. (Dkt. No. 30.) The Court appointed pro bono counsel for Wilks. (Dkt.
10  No. 31.) Wilks filed an amended complaint on November 30, 2009. (Dkt. No. 37.) Defendants
11  filed a motion to dismiss on March 8, 2010, which Wilks opposes.

**Analysis**

13  A.    Standard
14        Summary judgment is proper if the pleadings, depositions, answers to interrogatories,
15  admissions on file, and affidavits show that there is no genuine issue of material fact and that the
16  moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are
17  those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty
18  Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, "[t]he evidence of
19  the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id.
20  at 255. "[S]ummary judgment or judgment as a matter of law in excessive force cases should be
21  granted sparingly." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).
22  B.    Exhaustion
23        Defendants move to dismiss all of Wilks' claims on the theory he did not exhaust his
24  administrative remedies within the KCCF as required by the Prison Litigation Reform Act
25  ("PLRA"), 42 U.S.C. § 1997e(a). (Dkt. No. 53 at 13-14.) Defendants have not met their burden.
26

1    The PLRA requires Plaintiff to exhaust "such administrative remedies as are available" in order to bring an action "with respect to prison conditions under section 1983 . . . or any other Federal law. . . ." 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 93 (2006). A prisoner must complete the administrative review process in accordance with the applicable procedural rules, prior to bringing suit in federal court. Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009). The PLRA applies to pretrial detainees, such as Wilks. 42 U.S.C. § 1997e(h); Porter v. Nussle, 534 U.S. 516, 524 (2002).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). The defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20.

The grievance system in the KCCF has three steps. (Declaration of Andrea Williams, Ex. C. at 3.) First, the detainee is to discuss his concern with a staff member. (Id.) Second, the detainee is required to complete an Inmate Grievance form, which "will be reviewed and responded to by a supervisor." (Id.) Third, the detainee may file an appeal of the written grievance only if "[n]ew information is available that was not considered at the time of the original response" or "[a]n error was made by the original reviewer." (Id.)

The Court disagrees with Defendants that the third step is mandatory for exhaustion purposes. As written, the third step permits an appeal only if new facts arise or if the facts are incorrect as stated. It does not permit the filing of an appeal where the complainant simply disagrees with the remedy offered by the respondent to the grievance. Based on the record before the Court, exhaustion of the KCCF grievance process requires only the filing of an inmate grievance.

Defendants argue Wilks has not exhausted his remedies because they have record of only seven grievances he appealed to the third step and none relates to the facts at issue here. (Dkt.

ORDER DENYING IN PART AND GRANTING IN PART                                           CASE NO. C07-2084 MJP
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT -
3

No. 53 at 2-3.)  Defendants rely on a declaration from Andrea Williams, who is and has been the Records and Information Systems Manager for King County Department of Adult and Juvenile Detention ("DJAD") since October 2008.  (William Decl. ¶ 2.)  She states that she can find only seven grievances Wilks appealed "through the final Step 3 appeal in the DAJD Inmate grievance process during the period of August 2007 through February 2008."  (Id. ¶ 5.)  However, she admits that she cannot find two of the seven grievances that were appealed.  (Id. ¶ 6.)

Defendants have failed to meet their burden to show a lack of exhaustion.[1]  First, because Wilks was not required to appeal his grievances to step three in order to pursue them in court, the record of appealed grievances is of marginal relevance.  There is no statement from Ms. Williams as to what grievances Wilks did file, except for two that were included 'by way of example."  (Williams Decl. ¶ 7.)  Defendants have not demonstrated Wilks failed to file grievances regarding the acts at issue in his complaint.  See Wyatt, 315 F.3d at 1119.  Second, Wilks filed several grievances that are in the record to which Defendants failed to respond as required by the KCCF guidelines.  (Dkt. No. 53-3 at 25.)  For example, Wilks filed three grievances related to Defendant Sergeant Stowers and received only one response.  (Wilks Decl. Exs. A & B.)  The record also shows that Wilks grieved about Defendant Officer Elerick's actions, but that Elerick did not see the grievance until one-and-a-half years later.  (Elerick Dep. at 14:10-21.)  The evidence Defendants present is insufficient for the Court to grant summary judgment in their favor.

The Court also notes that the KCCF's grievance process and record retention system suffer from defects that go to the heart of the exhaustion issue.  Over one quarter of Wilks' appeals were lost or misplaced.  (William Decl. ¶ 6.)  This undermines the reliability of the evidence Defendants use to support their motion.  A Department of Justice report on the KCCF also indicates that grievances were not properly investigated and screened at roughly the same

---

[1] Wilks incorrectly contends Defendants did not raise the exhaustion defense until they filed for summary judgment.  (Dkt. No. 56 at 19-20.)  Defendants pleaded the affirmative defense in their answer to the amended complaint on January 13, 2010.  (Dkt. No. 48 at 19.)  They have not waived the claim.

1  time of the acts in question. (Jussel Decl. Ex. G at 8-9, 24.) Defendant Elerick's testimony that
2  he did not review Wilks' grievance until a year-and-a-half after it was filed further supports the
3  report's observation. (Elerick Dep. at 14:10-21.) The undisputed facts in the record do not show
4  that Wilks failed to exhaust the administrative remedies available to him. The Court DENIES
5  Defendants' motion on this issue.

6  C.     Merits

7       Defendants contend Wilks' claims fail on the merits because all uses of force were
8  necessary and reasonable. (Dkt. No. 53 at 15-16.) Disputed issues of material fact preclude
9  summary judgment on the majority of Wilks' claims. The Court addresses Wilks' claims as to
10 each Defendant separately.

11        1.      Standard

12      A pretrial detainee may challenge the conditions of his confinement under 42 U.S.C. §
13 1983 pursuant to the rights secured to him by the Fourteenth Amendment's incorporation of due
14 process clause. See Bell v. Wolfish, 441 U.S. 520 (1979). The Fourteenth Amendment
15 "prohibits all punishment of pretrial detainees." Demery v. Arpaio, 378 F.3d 1020, 1029 (9th
16 Cir. 2004); Bell, 441 U.S. at 535. "For a particular governmental action to constitute
17 punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2)
18 the purpose of the governmental action must be to punish the detainee." Demery, 378 F.3d at
19 1029 (quoting Bell, 441 U.S. at 538 ("A court must decide whether the disability is imposed for
20 the purpose of punishment or whether it is but an incident of some other legitimate governmental
21 purpose.")). The test asks "whether there was an express intent to punish, or 'whether an
22 alternative purpose to which [the restriction] may rationally be connected is assignable for it, and
23 whether it appears excessive in relation to the alternative purpose assigned [to it].'" Id. at 1028
24 (quoting Bell, 441 U.S. at 538). "[T]he harm or disability caused by the government's action
25 must either significantly exceed, or be independent of, the inherent discomforts of confinement."
26 Id. at 1030.

ORDER DENYING IN PART AND GRANTING IN PART                          CASE NO. C07-2084 MJP
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT -
5

To avoid running afoul of the Fourteenth Amendment, the officer's conduct must be incident to some legitimate governmental purpose. Demery, 378 F.3d at 1030. "Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). Retribution and deterrence are not legitimate nonpunitive governmental objectives. Demery, 378 F.3d at 1030-31; Bell, 441 U.S. at 539 n.20; White v. Roper, 901 F.2d 1501, 1504-05 (9th Cir. 1990). "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." Demery, 378 F.3d at 1030. "Nothing in Bell requires that, to be punishment, a harm must be independently cognizable as a separate constitutional violation (e.g., a deprivation of First Amendment rights, or a violation of a constitutional right to privacy)." Id.

Where the alleged act of "punishment" specifically involves an official's use of force against a pre-trial detainee, the Ninth Circuit has required courts to "balance several factors focusing on the reasonableness of the officer's actions given the circumstances." White, 901 F.2d at 1507. These factors, like those applicable under the Eighth Amendment, include "(1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether the force was applied in a good faith effort to maintain and restore discipline." Id. (citations omitted).

  2.  Defendant Sergeant Stowers

There are four incidents involving Defendant Stowers of which Wilks complains. The Court DENIES summary judgment as to all but one claim.

Wilks alleges that Stowers took his mattress and forced him to sleep on the floor. (Compl. ¶ 28.) Stowers states that on November 2, 2007, Wilks' mattress was removed because he destroyed it. (Gallagher Decl. Ex. B (Dkt. No. 53-4 at 9).) According to Stowers, the mattress was replaced the same day. (Id.) Wilks disputes that he soiled his mattress and claims

he was not given a mattress the same day. (Wilks Decl. ¶ 2.) The disputed facts indicate that the removal of Wilks' mattress may have been for an impermissible and punitive purpose. The Court DENIES summary judgment on this claim.

Wilks alleges that on November 13, 2007,[2] Stowers used excessive force when she deployed pepper spray into his cell, which covered his exposed body and genitals. (Wilks Decl. ¶ 3.) According to Stowers' report, Plaintiff smeared feces in his cell and was transferred to another cell in cuffs so that his cell could be cleaned. (Dkt. No. 53-4 at 36.) While in the other cell, Wilks refused to respond to five directives (the contents of which Stowers does not explain) and instead lay down on a bunk with his genitals exposed. (Id.) Stowers claims that after waiting five minutes for Wilks to comply, she released pepper spray into Wilks' cell, which ultimately helped gain his compliance. (Id.) Stowers explains that by spraying into the walls of a room and closing the door she could "marinate" the detainee and "let the spray take care of the situation." (Stowers Dep. at 20.) This practice is not listed in the KCCF's policies. (Id.) Wilks admits he disobeyed Stowers' requests, but questions the necessity of spraying the entire cell while he was naked. (Wilks Decl. ¶ 3.) Whether it was necessary to "marinate" Wilks involves disputed issues of fact as to the reasonableness of the use of force. The Court DENIES the motion.

Wilks claims that he was denied access to cold water or a shower to remove the pepper spray after the November 13, 2007 incident. (Id.) He alleges the only water he had was hot water from his toilet, which was "incredibly hot and caused [him] increased pain." (Id.) Stowers does not recall whether Wilks had water in his cell and thinks she denied him a shower because he was "too worked up." (Stowers Dep. at 60:8-16.) A dispute of fact exists as to whether Wilks was denied cold water and whether the denial was punitive or legitimate. The Court DENIES summary judgment on this claim.

---

[2] Wilks' declaration states the event occurred on November 14, 2007, while the use of force reports and Stowers state the events transpired November 13, 2007. For purposes of this order, the Court assumes the events transpired November 13, 2007.

ORDER DENYING IN PART AND GRANTING IN PART    CASE NO. C07-2084 MJP
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT -
7

On November 9, 2007, Stowers transferred Wilks in four-point restraints because of his uncontrollable behavior. (Gallagher Decl. Ex. B (Dkt. No. 53-4 at 9).) Stowers states that Wilks was put in restraints "because of his extreme and uncontrollable behavior." (Id.) Wilks does not dispute Stowers' version of the facts. The Court GRANTS summary judgment on this claim, as the reason to put Wilks in restraints appears not to involve any punitive measures.

### 3. Defendant Officer Anderson

Defendants do not dispute that there is an issue of fact precluding summary judgment on Wilks' claim against Defendant Anderson. (Dkt. No. 60 at 9.) On January 23, 2008, Wilks claims his finger was cut and a bone fractured when Officer Anderson slammed the pass through gate down on his finger while Wilks attempted to get his food. (Wilks Decl. ¶ 4.) Officer Anderson claims he put Wilks' lunch in the pass through and that Wilks abruptly put his hand in it as the gate closed. (Gallagher Decl. Ex. B; Dkt. No. 53-4 at 47 (accident report).) In light of these disputed facts, the Court DENIES summary judgment as to this claim.

### 4. Defendant Officer Sprague

Wilks accuses Defendant Sprague of restricting his access to food on January 18, 2008. (Dkt. No. 37 at 5.) Sprague makes no response and fails to rebut Wilks' claim. The Court DENIES summary judgment on this claim.

Wilks accuses Sprague of denying him use of bedding. (Dkt. No. 37 at 5.) Reports show that on January 19, 2008, Officer Sprague assisted in removing bedding from Wilks' cell after he blocked the pass through and refused to give over a toothbrush that he was not permitted to keep because he had previously used a toothbrush as a weapon. (Dkt. No. 53-4 at 10.) Wilks does not offer facts contradicting this. The Court GRANTS summary judgment on this claim; there is no evidence that the acts were punitive. They appear necessary to protect the safety of staff and inmates. See Jones, 393 F.3d at 932.

\\

\\

ORDER DENYING IN PART AND GRANTING IN PART                    CASE NO. C07-2084 MJP
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT -
8

5. <u>Defendants Officer Ossewaarde and Officer Sprague</u>

Wilks accuses Defendant Ossewaarde of smashing his fingers in a shield on January 29, 2008. (Wilks Decl. ¶ 9.) Wilks also accuses Sprague of looking on and failing to act. (<u>Id.</u> ¶ 8.) Defendants provide no facts to rebut the allegations and merely point to other reports unrelated to Wilks' claim. The Court DENIES the motion on this claim.

6. <u>Defendant Sergeant Gailfus</u>

Wilks alleges Defendant Gailfus pepper sprayed him on January 19, 2008, because Wilks refused to give over his toothbrush. (Wilks Decl. ¶ 5.) Wilks says he was given verbal commands to give the toothbrush over and when he refused, Gailfus deployed pepper spray. (<u>Id.</u>) Gailfus states that she sought return of the toothbrush because Plaintiff had previously turned one into a "shank-style weapons several days earlier." (Dkt. No. 53-4 at 10.) After giving Wilks multiple commands which he disregarded and a warning as to the pepper spray, Gailfus says she "deployed two short bursts of pepper spray to gain compliance." (<u>Id.</u>) Gailfus states she gave Wilks a clean uniform and access to decontaminate, although he was not given a shower because "the circumstances did not require a shower." (<u>Id.</u>) It was not the KCCF's practice to give an aggressive detainee a shower after pepper spray and the use of force guidelines do not require a shower. (Gailfus Dep. at 16; Ex. 3 to Stowers Dep.)

The Court GRANTS summary judgment on this claim. Gailfus has presented an uncontroverted, valid government interest in obtaining the toothbrush and Wilks has admitted he failed to comply with directives. <u>See</u> <u>Demery</u>, 378 F.3d at 1028, 1030.

7. <u>Defendant Sergeant Merritt</u>

Wilks alleges that on January 18, 2008, Defendant Merritt deployed pepper spray into Wilks' cell and turned off the water. (Wilks Decl. ¶ 6.) Merritt states that he asked Wilks to give over a noose made of toilet paper, but that Wilks refused to comply with his request. (Dkt. No. 53-4 at 10.) Merritt deployed a short burst of pepper spray into Wilks' cell. (<u>Id.</u>) Merritt states that Wilks was assisted in decontaminating himself. (<u>Id.</u>) Disputed issues of fact remain

as to whether it was reasonable and necessary to pepper spray Plaintiff to obtain the toilet paper noose and to deny Wilks access to decontamination. It is also unclear what the nature of the noose was and what danger it posed. The Court DENIES summary judgment.

8.   Defendant Officer Elerick

In early 2008, Wilks alleges Defendant Elerick handcuffed and bent his hands such that a pre-existing wound opened up. (Wilks Decl. ¶ 7.) Elerick also allegedly slammed Wilks' head into the concrete wall. (Wilks Decl. ¶ 7.) Elerick merely denies that he assaulted Wilks. (Dkt. No. 53-4.) The Court DENIES summary judgment on this claim, as it involves disputed material facts as to potentially excessive and punitive force.

9.   Defendant Officer Jones

Wilks accuses Defendant Jones of overtightening handcuffs on him while transporting him to a Westlaw appointment. (Wilks Decl. ¶ 10.) Jones states that Wilks made racial and death threats against him and that Wilks resisted his escorts. (Dkt. No. 53-4 at 11.) Jones states Wilks was not harmed. The Court DENIES summary judgment because a dispute of fact exists as to whether Wilks' wrists were overtightened, which may have been a punitive and unreasonable act.

10.   Defendant Officer Dang

Wilks accuses Defendant Dang of kicking a metal door that struck Wilks' face and cracked two of his teeth on November 16, 2007. (Wilks Decl. ¶ 11.) Dang says that he did not kick the door, and there is no incident report. (Dkt. No. 53-4 at 12-13.) He also says that he was not working in the post where Wilks was housed on November 16, 2007. This does not preclude the possibility that he struck the door, which is how Wilks portrays the facts. The Court DENIES the motion as to this claim. It presents a question of fact as to whether Dang struck the door and, if so, whether there was any valid reason for him to do so.

\\

\\

D.     Qualified Immunity

Defendants argue broadly that "as a matter of law, plaintiff has failed to establish that his constitutional rights were violated by the defendants in their management of plaintiff's conduct while in KCCF custody." (Dkt. No. 53 at 19.) The facts are nearly all in dispute as to whether the force involved was necessary or reasonable to protect and serve legitimate government interests. Defendants' bland, conclusory assertions do little to convince the Court that qualified immunity is proper on this record. The Court DENIES summary judgment on this issue.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v.Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), overruled on other grounds by Pearson v. Callahan, 129 S. Ct. 808, 818 (2009)). In applying the two-part qualified immunity analysis, the Court "must determine whether, taken in the light most favorable to [Plaintiff], Defendants' conduct amounted to a constitutional violation, and . . . [the Court] must determine whether or not the right was clearly established at the time of the violation." Bull v. City and County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010) (quotation omitted). It is within the Court's "sound discretion [to] decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818.

It is clearly established that pretrial detainees have a right to be free from the use of excessive force incident to the staff's maintenance of security and order in the jail. Demery, 378 F.3d at 1030-31; Bell, 441 U.S. at 539 n. 20; White, 901 F.2d at 1504-05. "To be established clearly, however, there is no need that 'the very action in question [have] previously been held unlawful.'" Safford Unified Sch. Dist. No. 1 v. Redding, 129 S. Ct. 2633, 2643 (2009) (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)). "[O]fficials can still be on notice that their conduct violates established law . . . in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). In excessive force cases where material facts are in dispute, the reasonableness of a mistake of fact or law that might entitle an officer to qualified immunity cannot usually be

ORDER DENYING IN PART AND GRANTING IN PART                                              CASE NO. C07-2084 MJP
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT -
 11

resolved on a motion for summary judgment. See Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

1. Stowers

Whether it was objectively reasonable for Stowers' to remove Wilks' mattress is disputed on this record. The mere removal of the mattress does not necessarily violate Wilks' rights, but if the Court accepts Wilks' account, then the deprivation of the mattress for a lengthy period suggests Stowers acted for the sake of punishment in violation of Wilks' clearly established rights, rather than for security reasons. See White, 901 F.2d at 1507. Stowers is not entitled to qualified immunity on this claim.

As to the November 14, 2007 pepper-spray incident, Stowers is not entitled to qualified immunity. Disputed facts exist as to whether there was a need for this level of force and whether and if her denial of cold water was punitive and a violation of Wilks' clearly established rights. See Jones, 393 F.3d at 932.

The Court DENIES summary judgment.

2. Anderson

Defendants do not dispute that there is an issue of fact precluding summary judgment on Plaintiff's claim against Anderson. (Dkt. No. 60 at 9.) Defendants have offered no reason that might excuse Anderson's act under qualified immunity. See Jones, 393 F.3d at 932. The Court DENIES summary judgment on this issue.

3. Sprague

Wilks accuses Officer Sprague of restricting his access to food. (Dkt. No. 37 at 5.) Officer Sprague makes no response. Defendants have made no showing of an entitlement to qualified immunity, and the Court DENIES summary judgment.

4. Ossewaarde and Sprague

Defendants provide no facts to rebut the allegations against them with regard to the shield incident. The Court DENIES Defendants' motion since Defendants have not met their burden.

5.      Merritt

Wilks alleges that on January 18, 2008, Merritt deployed pepper spray into his cell and turned off the water. (Wilks Decl. ¶ 6; Dkt. No. 53-4 at 10.) Merritt states he used the spray to get rid of a noose Wilks fashioned from toilet paper, and that he helped Wilks decontaminate. Disputed facts exist as to the need and reasonableness of the use of force and denial of access to water that preclude the Court from finding Merritt entitled to qualified immunity. The Court DENIES the motion.

6.      Elerick

Wilks alleges Defendant Elerick handcuffed and bent his hands such that a pre-existing wound opened up. (Wilks Decl. ¶ 7.) Elerick also allegedly slammed Wilks' head into the concrete wall. (Wilks Decl. ¶ 7.) Elerick merely denies that he assaulted Wilks. (Dkt. No. 53-4.) Disputed facts make it impossible to determine whether the use of force took place and whether Elerick is entitled to qualified immunity. The Court DENIES the motion on this claim.

7.      Jones

Wilks accuses Officer Jones overtightening handcuffs on Wilks while transporting him to a Westlaw appointment. (Wilks Decl. ¶ 10.) A dispute of fact exists as to whether the cuffs were overtightened and whether the use of force was reasonable. The Court DENIES summary judgment. See Jones, 393 F.3d at 932.

8.      Dang

Wilks alleges Officer Dang kicked a metal door that struck Wilks' face and cracked two of his teeth. (Wilks Decl. ¶ 11.) Dang says that he did not kick the door. (Dkt. No. 53-4 at 12-13.) The Court DENIES the motion on this claim because the disputed facts exist as to whether the act was reasonable and necessary in light of what appears a violation of Wilks' rights.

E.      Medical Claims

Defendants argue that all health care related claims should be dismissed because Wilks has dismissed the only two health care provider defendants from the case. (Dkt. No. 53 at 16-

18.) The argument is erroneous. As Defendants note, all "prison officials have a duty to provide humane conditions of confinement, including . . . medical care." (Id. at 17.) The remaining claims here are not that Wilks received inadequate health care, but that the current defendants failed to provide him humane conditions of confinement or access to water to decontaminate when he was pepper sprayed. There need not be a nurse or doctor named to substantiate those claims. The Court DENIES the motion on this issue.

F.      Motion to Strike

Defendants move to strike Wilks' inclusion of a Department of Justice report on the KCCF, a newspaper article about a prisoner in KCCF who died for lack of medical care, and one statement in Wilks' declaration. (Dkt. No. 60 at 1-2.)

Defendants erroneously argue the Department of Justice report is hearsay. As Wilks points out, the report is not hearsay pursuant to Fed. R. Evid. 803(8). The Department had a duty to make the report under 42 U.S.C. § 1997. Under Rule 803(8)(B), the contents of the report are admissible. The Court DENIES the motion to strike the report.

The newspaper article is not relevant to deciding the motion for summary judgment. The Court does not rely on any information in the article. The Court DENIES the motion to strike as MOOT.

Defendants move to strike a paragraph in Wilks' declaration on the grounds that it is improper lay opinion. (Dkt. No. 60 at 2.) Defendants attack Wilks' statement: "I noticed a pattern of lying or otherwise omitting key facts in officer reports, inmate infraction reports, and use-of-force reports." (Wilks Decl. ¶ 12.) Defendants argue Wilks has no expertise in recognizing patterns of lying and that his statement should be stricken. (Dkt. No. 60 at 2.) To the extent that Wilks opines as to patterns generally, his opinion is inadmissible lay opinion. However, to the extent that his statement concerns reports about him for which he has personal knowledge, the testimony is admissible. The Court DENIES in part and GRANTS in part the motion to strike, and considers the statement for the limited purpose outlined above.

**Conclusion**

Defendants have not sustained their argument that Wilks failed to exhaust his administrative remedies prior to filing suit. The Court DENIES Defendants' motion as to exhaustion. On the merits, the Court GRANTS in part and DENIES in part Defendants' motion. Disputed issues of material fact preclude the Court from granting summary judgment in Defendants' favor, except with regard to one claim against Defendant Stowers, all claims against Defendant Gailfus, and one claim against Defendant Sprague. As to qualified immunity, the Court DENIES summary judgment. Defendants have not met their burden to obtain this relief. The Court GRANTS in part and DENIES in part Defendants' motion to strike.

The Clerk shall transmit a copy of this Order to all counsel of record.

Dated this 25th day of May, 2010.

Marsha J. Pechman
United States District Judge